IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LYNDA COHEN,<br>Plaintiff<br><br>vs.<br><br>BH MEDIA GROUP, INC., ED STEIGER, STEPHANIE LODER, BUZZ KEOUGH, and JOHN DOES 1-3,<br>Defendants | Civil Action No.:<br><br>COMPLAINT<br><br>Jury Trial Demanded<br><br>Electronically Filed |

Plaintiff, Lynda Cohen, by and through her counsel, Jenna M. Cook, Esquire of the Law Offices of Jenna M. Cook, brings this Complaint against BH Media Group, Inc. and John Does 1-3 allege as follows:

INTRODUCTION

1. Plaintiff brings this lawsuit seeking recovery against defendants for defendants' violations of the Fair Labor Standards Act, as amended (the "FLSA" or the "Act"), 29 U.S.C. § 201 *et seq.* for unpaid wages and retaliation; the New Jersey Wage and Hour Law, N.J.S.A.34:11-56a, et seq., the New Jersey Law Against Discrimination; and, violations of the New Jersey Conscientious Employee Protection Act.

JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331.

3. This Court has subject matter jurisdiction over Plaintiff's NJWHL and other claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

5. At all times relevant hereto plaintiff performed non-exempt duties for the defendant BH Media Group, Inc. in Atlantic County New Jersey within the jurisdiction and venue of this Court.

6. Plaintiff is a resident of Atlantic County, New Jersey.

7. At all times relevant to this Complaint, BH Media Group, Inc. was and is an employer and enterprise engaged in interstate commerce as defined by 29 U.S.C. §§ 201 and 203.

8. Defendants are within the jurisdiction and venue of this Court.

## PARTIES
### Defendants

9. Defendant BH Media Group, Inc., is, upon information and belief, a news reporting business with a principal place of business located in Pleasantville, New Jersey and its address for service of process is 820 Bear Tavern Road, West Trenton, New Jersey 08628.

10. Defendant Ed Steiger ("Steiger"), is a natural person, was at all relevant times employed by BH Media, Inc. in its Pleasantville, New Jersey location.

11. At all relevant times, Steiger was an employee of defendant BH Media, Inc. who had authority to direct and control the work performance of plaintiff, had authority to take corrective action regarding the violations of the law, rule or regulation of which the plaintiff complained

12. Steiger, at all relevant times, acted directly or indirectly, in the interest of BH Media, Inc., with respect to the terms and conditions of plaintiff's employment, including, but not limited to, whether to pay plaintiff in accordance with the FLSA, NJWHL and who otherwise retaliated against plaintiff for her objections to defendants' FLSA and NJLAD violations.

13. Stephanie Loder ("Loder"), is a natural person, who at all relevant times was an employee of BH Media, Inc. in its Pleasantville, New Jersey location.

14. Loder, at all relevant times, was an employee of defendant BH Media, Inc. who had authority to direct and control the work performance of plaintiff.

15. Loder, at all relevant times, acted directly or indirectly, in the interest of BH Media, Inc. with respect to the terms and conditions of plaintiff's employment, including, but not limited to, enforcement of the policies of BH Media,

Inc., engaged in discriminatory conduct toward plaintiff and otherwise aided and abetted discriminatory treatment of plaintiff with respect to the terms and conditions of her employment.

16. Buzz Kehoe ("Kehoe") is a natural person, who at all relevant times was an employee of BH Media, Inc. in its Pleasantville, New Jersey location.

17. Kehoe, at all relevant times, was an employee of defendant BH Media, Inc. who had authority to direct and control the work performance of plaintiff.

18. Kehoe, at all relevant times, acted directly or indirectly, in the interest of BH Media, Inc. with respect to the terms and conditions of plaintiff's employment, including, but not limited to, enforcement of the policies of BH Media, Inc., engaged in discriminatory conduct toward plaintiff and otherwise aided and abetted discriminatory treatment of plaintiff with respect to the terms and conditions of her employment.

19. John Does 1-3, are individuals whose true names are unknown to the plaintiff at the time of filing of this Complaint and were at all relevant times employed by BH Media, Inc. and acted directly or indirectly in the interest of BH Media Inc. including, controlling the terms and conditions of plaintiff's employment, maintained employee records, determined whether to

pay plaintiff in accordance with the FLSA, NJWHL, who retaliated against plaintiff and aided and abetted and/or participated in the retaliation and discrimination of plaintiff, and was an employee of defendant BH Media, Inc. who had authority to direct and control the work performance of plaintiff, had authority to direct and control the work performance of plaintiff, had authority to take corrective action regarding the violations of the law, rule or regulation of which the plaintiff complained and/or may be responsible for plaintiff's damages.

## Plaintiff

20. Plaintiff, Lynda Cohen, a woman, is a natural person with a residential address located on Mill Road, Egg Harbor Township, Atlantic County, New Jersey.

## FACTS RELEVANT TO PLAINTIFF'S CLAIMS

A. Plaintiff's Employment Background.

21. For approximately 16 years, plaintiff was an employee of an entity trading as the Press of Atlantic City.

22. Plaintiff held the position of news reporter from 2005 until her pretextual and retaliatory termination by defendants in July, 2016.

23. The Press of Atlantic City publishes news that occurs in and around the nation as well as Atlantic and Cape May Counties via newspaper and internet.

24. In or about 2012, BH Media, Inc., purchased or otherwise acquired the interests of the entity trading as the Press of Atlantic City and continued to operate the entity as a news reporting agency.

25. Plaintiff continued her employment with BH Media, Inc. after it acquired the Press of Atlantic City as a news reporter.

26. Plaintiff was a stellar employee for the entirety of her career as a news reporter free of discipline until defendants Steiger, Loder, Kehoe and others, subjected plaintiff to discriminatory, retaliatory and pretextual discipline and ultimately terminated plaintiff.

B. **The New "Lunch Hour" Policy, Plaintiff's Objections and Adverse Employment Action of Defendants.**

27. In late, 2015 BH Media circulated a new policy that required plaintiff and similarly situated employees to work 9 hours daily but be paid for 8 hours.

28. Plaintiff repeatedly objected to this policy to her Steiger because she reasonably believed she and others should be paid for all hours worked and that such policy violated a law, rule or regulation promulgated pursuant to law or otherwise violated public policy.

29. In February and March 2016, plaintiff and other similarly situated employees were again advised that they would only be paid for 8 hours daily even if they worked 9 hours,

because 1 hour daily would be unpaid for lunch, even if they did not take a 1 hour lunch.

30. Plaintiff and others were told by Steiger that federal law required that plaintiff and other similarly situated employees take a 1 hour lunch break daily.

31. Plaintiff and others were told by Steiger if they did not take lunch or put on their time sheet that they had taken lunch they would be fired.

32. Plaintiff objected to this policy and statement by Steiger and communicated her belief to Steiger that no such federal law existed or applied to plaintiff.

33. Plaintiff also continued to object to working 9 hours daily but being paid for 8 hours daily.

34. As result of plaintiff's objections, Plaintiff was subject to adverse employment action in the form of pretextual and retaliatory discipline administered by Steiger.

### C. **Disclosure of Plaintiff's Protected Information, Plaintiff's Objections and Adverse Employment Action.**

35. Plaintiff was out of work on protected medical leave shortly after the new "lunch policy" was implemented.

36. When plaintiff returned to work, she learned that Loder had disclosed the confidential reasons for her medical leave to her peers.

37. Plaintiff reasonably believed that it was a violation of HIPPA for Loder to disclose her protected health information to her peers and coworkers.

38. Plaintiff reported her belief that her HIPPA rights had been violated to Steiger.

39. Steiger marched plaintiff thru the newsroom floor to confront Loder making it appear as though plaintiff was in trouble.

40. Steiger disclosed plaintiff's objections and concerns to Loder in front of plaintiff which caused plaintiff embarrassment.

41. As a result of learning of plaintiff's reports to Steiger, Loder changed the terms and conditions of plaintiff's employment by micromanaging her and making new rules that only applied to plaintiff.

**D. The "Time Sheet Policy", Plaintiff's Objections and Adverse Employment Action.**

42. In late May, defendants implemented another new policy which required all timesheets to be submitted by Friday of each week.

43. Plaintiff and other employees were told they would not be paid if their timesheets were not in by Friday.

44. At the time the policy was communicated plaintiff's workweek began on Monday and ended on Sunday.

45. If plaintiff submitted her time sheet on Friday and worked Saturday and Sunday as she usually did, plaintiff would not be paid for all hours worked in a workweek.

46. Plaintiff objected to this policy to Loder and Steiger based upon her reasonable belief that such policy violated a law, rule, regulation promulgated pursuant to law and/or public policy.

47. The policy, if enforced as to plaintiff would violate the FLSA and NJWHL in that plaintiff would not be paid for all hours worked in a work week.

48. As a result of plaintiff's objections to the policy she was disciplined by defendants in the form of a write up.

**E. The New "Check In" Policy and Adverse Employment Action.**

49. During the same period of time that plaintiff was objecting to the new policies above, defendant Loder began micromanaging plaintiff.

50. Prior to the above new policies and for all of her years as a reporter, plaintiff was free to create and pursue her own leads, generate resources and report the news without having to report daily to anyone.

51. The new check in policy significantly altered the terms and conditions of plaintiff's employment.

52. By way of example, and not limitation, plaintiff was required to check in and communicate daily with Loder and to tell Loder where she was at all times.

53. Plaintiff had never been required to check in and communicate with Loder or anyone else on a daily basis prior to her objections about the new policies she believed to be unlawful.

54. Plaintiff was the only news reporter that was required to check in and constantly communicate with Loder.

55. Plaintiff constantly communicated with Loder via email, text and telephone to comply with this new rule.

56. Despite her compliance with the new "check in" rule, Loder would interrupt plaintiff continuously with telephone calls, texts and emails while she was on the street even though Loder knew the stories plaintiff was working on and where plaintiff was working.

57. Loder constantly alleged plaintiff failed to comply with the new check in rule and disciplined plaintiff by writing her up.

58. Loder's micromanagement of plaintiff, rules applicable to plaintiff and discipline of plaintiff were pretextual and retaliatory against plaintiff for her objections to the new policies created by defendants and her disclosures that her HIPPA rights had been violated.

59. Plaintiff repeatedly reported to Steiger plaintiff's belief that Loder's discipline was retaliatory and pretextual.

60. Steiger did nothing to stop the pretextual discipline and retaliatory conduct by Loder.

   **F. The Discriminatory Dress Code and Assignments, Plaintiff's Objections and Adverse Employment Action.**

61. Further, when plaintiff returned from her medical leave a new dress code policy was instituted for women.

62. The policy required women to wear pantyhose with skirts, and dictated the type of shoes women had to wear.

63. Since plaintiff spent most of her days on the street working on stories it was uncomfortable and unfair for her and other women reporters to comply with the dress code.

64. Plaintiff objected to the dress code policy to Steiger and communicated her belief that the policy was discriminatory toward women, sexist, and unfair.

65. Plaintiff continued to be micromanaged and subject to discriminatory policies and practices of defendant based upon her objections to the new policies of defendants.

   **G. The Favorable Work Assignments Taken From Plaintiff, Plaintiff's Objections and Adverse Employment Action Taken Against Plaintiff.**

66. In the summer Plaintiff volunteered to report on a concert in Atlantic City.

67. Steve Hughes, an editor gave the assignment to his live in girlfriend instead of plaintiff.

68. Plaintiff reported to Loder her concern that the assignment had not been given to her, that it had been given to Hughes' live in girlfriend and her belief that a woman in a sexual relationship with Hughes was receiving favorable treatment over those that did not have a sexual relationship with Hughes.

69. Loder urged plaintiff to report her concerns to Buzz Keough and plaintiff did so.

70. Plaintiff also requested from Steiger the policy on whether persons in romantic relationships could supervise one another and dictate assignments.

71. Plaintiff was disciplined by Keough and Keough sent an email to staff mocking plaintiff.

### H. **Plaintiff's Participation in Wage and Hour Investigation and Adverse Employment Action.**

72. Plaintiff became aware that a DOL inquiry or investigation was occurring related to the lunch hour rule.

73. Plaintiff provided information to the DOL with regard to its investigation of defendants' alleged violations of wage and hour laws.

74. Plaintiff's participation was known by Steiger and others.

75. Shortly thereafter plaintiff was terminated as a pretext and in retaliation for her objections to defendants' violations of law, rule, regulation or public policy and the disclosures she made to the DOL.

COUNT I
Recovery Of Wages, Compensation and Damages
Pursuant To FLSA and NJWHL

76. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

77. At all times relevant to plaintiff's claims, she was an employee of defendant BH Media, Inc.

78. Plaintiff performed non-exempt duties as a news reporter and employee of defendant BH Media, Inc.

79. As set forth herein, defendants BH Media, Stephanie Loder, and Ed Steiger failed and refused to pay plaintiff wages for all hours worked during a workweek.

80. Defendants improperly deducted time from plaintiff's working hours on a daily basis.

81. Defendants further retaliated against plaintiff for objecting to its policy and practice of failing to pay wages to plaintiff and others for all hours worked in a work week.

82. Further, at all times relevant herein, Steiger and Loder were persons acting directly or indirectly in

the interest of their employer BH Media, Inc., with respect to the terms and conditions of plaintiff's employment, including, but not limited to, enforcement of defendant's policy regarding payment of wages and overtime, defendant's record keeping, and otherwise retaliated against plaintiff for objecting to such violations of the FLSA and NJWHL.

83. As a direct and proximate result of defendant's conduct aforesaid, plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment against defendants jointly, severally and in the alternative for compensatory damages, liquidated damages, punitive damages, attorney's fees, interest, costs, and such other relief as the Court may deem equitable and just.

## COUNT II
### Violation of New Jersey Law Against Discrimination

84. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

85. As set forth herein, defendant BH Media, Inc. discriminated against plaintiff with respect to the terms and conditions of her employment on the basis of her gender by making and enforcing policies solely related to gender.

86. As set forth herein, defendants discriminated against plaintiff by allowing Hughes to assign favorable stories to his live in girlfriend instead of plaintiff.

87. Defendants' Loder and Steiger aided and abetted the discriminatory treatment of plaintiff and resulting adverse employment actions against plaintiff.

88. Defendant Steiger retaliated against plaintiff for her objections and claims of discrimination with respect to sex based policies of defendant which impacted women and were otherwise discriminatory.

89. Defendants Keough and Loder aided and abetted the discriminatory treatment by disciplining plaintiff for her complaints.

90. As a direct and proximate result of defendants' conduct aforesaid, plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment against defendants jointly, severally and in the alternative for damages including punitive damages, front pay, back pay, compensatory damages, attorney's fees, interest, costs and such other relief as the Court deems equitable and just.

## COUNT III
### VIOLATION OF THE NEW JERSEY CONSCIENTIOUS EMPLOYUEE PROTECTION ACT

91. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

92. Plaintiff objected to policies and practices of defendant to her supervisor which she reasonably believed violated a law, rule, regulation and/or public policy as set forth herein.

93. Plaintiff provided information to a public body conducting an investigation or inquiry into a violation of the law, rule or regulation by defendant.

94. As a result of plaintiff's objections and disclosures, defendants retaliated against plaintiff with regard to the terms and conditions of plaintiff's employment by subjecting plaintiff to pretextual discipline and ultimately terminating plaintiff.

WHEREFORE, Plaintiff demands judgment against defendants, jointly, severally and in the alternative, for damages including front pay, back pay, compensatory damages, punitive damages, interest, attorney's fees, costs and such other relief as the court deems equitable and just.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

/s/ *Jenna M. Cook*

Jenna M. Cook, Esquire
Law Offices of Jenna M. Cook
1201 New Road, Suite 230
Linwood, New Jersey 08221
609-601-6625
Facsimile 609-479-2006
[jenna@jmcooklaw.net](jenna@jmcooklaw.net)

Dated: January 3, 2017